a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DARRIN ROBINSON, Plaintiff | CIVIL ACTION NO. 1:18-CV-966-P |
| VERSUS | JUDGE DEE D. DRELL |
| RODNEY SLAY, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is the civil rights complaint (42 U.S.C. § 1983) of pro se Plaintiff Darrin Robinson ("Robinson") (#158443). (Doc. 1). Robinson is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana. Robinson complains that he was denied adequate medical care and was subjected to retaliation. He seeks monetary damages and injunctive relief.

Because Robinson fails to state a claim for which relief can be granted, his complaint and motion for injunctive relief (Doc. 1) should be dismissed.

I. Background

Robinson alleges that, in April 2017, Warden Rodney Slay lied to the parole board, which caused Robinson to be denied parole. Specifically, Robinson alleges that Warden Slay told the parole board that Robinson was a "third felony offender," when he is actually a "second felony offender." (Doc. 1, p. 9). Robinson also alleges that Warden Slay "knowingly submitted bogus disciplinary offenses" so that Robinson could not meet the requirements for parole. (Doc. 1, p. 9). Robinson complains that,

at the parole hearing, Warden Slay "unprofessionally posed a grimace, frowned, grunted, and used a hostile tone of voice while intervening." (Doc. 1, p. 9). Finally, Robinson claims that Warden Slay and subordinates in attendance at the parole hearing yelled for Robinson to "shut up," placed Robinson in handcuffs, and lied in subsequent reports about what happened at the parole hearing. (Doc. 1, p. 9).

Robinson alleges that he was diagnosed with Benign Fasciculation in 2012, and he was prescribed Neurontin. (Doc. 1, p. 14). In 2017, Robinson was diagnosed with gout, and prescribed Allopurinol. (Doc. 1, pp. 15-16). Days after starting Allopurinol, Robinson experienced nausea, vomiting, diarrhea, spasms, and pain. (Doc. 1, p. 16).

On May 4, 2017, Robinson decided not to take his medications administered at pill call "to determine whether these medications were the cause of his ailments." (Doc. 1, p. 16). Robinson brought the pills back to his cell. (Doc. 1, p. 16). The following day, a shakedown occurred, and 12 of Robinson's pills were discovered in his cell, as well as some pills that were not prescribed to Robinson. Robinson was written up for possessing contraband. (Doc. 1, p. 16). Robinson states that, because of the disciplinary violation, Dr. McVea canceled the prescriptions for Neurontin, Prilosec, and Hytrin, without obtaining a drug screen. (Doc. 1 p. 17).

Robinson states that he filed a complaint against Dr. McVea with the Louisiana State Board of Medical Examiners in June of 2017. (Doc. 1, p. 17). Robinson concludes that, in retaliation for filing the complaint, Dr. McVea refused to

treat Robinson for months and refused to provide Robinson with a medical duty status for gout. (Doc. 1, p. 17).

Robinson also alleges that Dr. McVea refused to provide him with any medication for months, but finally agreed to put Robinson back on the discontinued medications if he won the appeal of his disciplinary conviction. (Doc. 1, p. 18). Dr. McVea then prescribed 100 mg of Tegretol, which Robinson concludes "did not equal 10% of the strength of [Robinson's] prescribed Neurontin." (Doc. 1, p. 19). Because the Tegretol provided no relief for his Benign Fasciculation condition, Robinson made repeated sick calls, which were allegedly ignored. (Doc. 1, p. 19).

Robinson alleges that Captain Dewy escorted him to the infirmary for sick call on July 27, 2017. (Doc. 1, p. 20). When he arrived at the infirmary, Robinson was approached by Defendants Tiser, Mattie, Bordelon, Dewy, and Duplechain, who threatened to harm Robinson if he did not comply with their demands. (Doc. 1, p. 20). Defendants forced Robinson to submit a DNA sample. (Doc. 1, p. 20).

II. Law and Analysis

    A. Robinson's complaint is subject to screening under §§ 1915(e)(2) and 1915A.

Robinson is a prisoner who has been allowed to proceed *in forma pauperis*. (Doc. 4). As a prisoner seeking redress from an officer or employee of a governmental entity, Robinson's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. See Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam); Rosborough v. Mgmt. and Training Corp., 350 F.3d 459, 461 (5th Cir. 2003) (holding that prison management corporations and their employees are state actors under §

3

1983). Because he is proceeding *in forma pauperis*, Robinson's complaint is also subject to screening under § 1915(e)(2). Both §§ 1915(e)(2)(B) and 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

### B. Robinson fails to state a claim for the deprivation of medical care.

Robinson complains that Dr. McVea discontinued Neurontin after Robinson was convicted of a disciplinary violation for possessing medications in his cell. Robinson alleges that Dr. McVea refused to provide any alternative medication for months following the conviction.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to the serious medical needs of prisoners. See Farmer v. Brennan, 511 U.S. 825, 834, (1994); Estelle v. Gamble, 429 U.S. 97, 105 (1976). Deliberate indifference "is an extremely high standard to meet." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). An inmate must show that prison personnel "refused to treat him, ignored

his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." Domino v. Tex. Dep't Crim. J., 239 F.3d 752, 756 (5th Cir. 2001) (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).

According to his complaint and exhibits, the shakedown of Robinson's cell was conducted on May 5, 2017. Just three days later, on May 8, 2017, Robinson was prescribed Motrin and Tegretol for pain. (Doc. 1-3, pp. 41-42). Thus, Robinson did not go months without medical treatment or alternative medications.

Additionally, Robinson provides copies of at least 20 sick calls where he was examined by a medical professional from May through November of 2017. (Doc. 1-2, pp. 30-47; Doc. 1-3, pp. 1-3). Robinson was examined by Dr. McVea again on August 22, 2017, and received additional medications. (Doc. 1-3, p. 41). Although Dr. McVea did not order Neurontin, no fasciculation was noted at the examination. (Doc. 1-3, p. 41). Robinson was again prescribed Allopurinol. (Doc. 1-3, p. 42).

According to his exhibits, Robinson was not denied medical care. See Varnardo v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where medical records documented that the prisoner was not denied medical attention). Although Robinson clearly disagrees with the treatment he received and the medications prescribed by Dr. McVea, such disagreement does not state a constitutional claim. See Rogers v. Boatright, 709 F.3d 403, 410 (5th Cir. 2013); Estelle v. Gamble, 429

U.S. 97, 107 (1976) (explaining that the decision whether to provide a particular type of treatment "is a classic example of a matter for medical judgment").

### C. Robinson fails to state a claim for retaliation.

Robinson alleges that Dr. McVea refused to treat him for months and refused to provide him with a no duty status for gout in retaliation for Robinson filing a complaint with the Board of Medical Examiners. (Doc. 1, pp. 15-16).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. See Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Jones, 188 F.3d at 325 (citations omitted).

First, Dr. McVea discontinued the Neurontin prior to Robinson filing a complaint with the Board. Additionally, Robinson's allegation that he was denied medical care in retaliation is not supported by his own exhibits, which reflect that he received sick calls at least 20 times after the complaint was filed against Dr. McVea. (Doc. 1-2, pp. 30-47; Doc. 1-3, pp. 1-3). Furthermore, Robinson was provided with a "no duty" status by Dr. McVea in May 2018. (Doc. 11, p. 2). Although Dr. McVea did not provide a medical duty status at the time Robinson first requested, this amounts

6

to a disagreement with medical care. Because Robinson has not alleged a retaliatory adverse act with respect to his medical care, he cannot state a retaliation claim. Essentially, Robinson alleges no more than his personal belief that he is the victim of retaliation. See Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

### D. Robinson fails to allege a constitutional violation with respect to the collection of a DNA sample.

Robinson alleges that he was forced to provide a DNA sample to Defendants in violation of a Louisiana law permitting inmates convicted prior to September 1999 to refuse the collection of a sample. (Doc. 1, p. 29).

In Brown v. Williams, 124 F. App'x 907, 909 (5th Cir. 2005), the plaintiff alleged that various prison officials retaliated against him for exercising his Fourth Amendment and due process rights. Id. Brown was found guilty of a disciplinary offense—aggravated disobedience—for refusing to provide a DNA sample. He was penalized with 10 days of administrative segregation and the loss of incentive pay. Id. Allegedly, the defendants told Brown that La. R.S. 15:609 permitted them to use force to collect a DNA sample, but Brown asserted that the statute permitted inmates convicted prior to September 1999, like Brown, to refuse such collection. Id. Brown eventually agreed to provide a sample, but only after the defendants continued to threaten him verbally. Id.

To the extent Brown was challenging the constitutionality of the statute, the United States Fifth Circuit Court of Appeals noted that it previously held a similar Texas statute, Tex. Gov't Code § 411.148, which provides for the collection of blood

7

samples from felons for registration in a DNA databank, does not violate those felons' Fourth Amendment right to privacy. Id. The Fifth Circuit concluded that, because the Texas statute is nearly identical to Louisiana's, to the extent Brown challenged the constitutionality of the statute, Brown's challenge was frivolous. Id. (citing Velasquez v. Woods, 329 F.3d 420, 421 (5th Cir. 2003)). The Fifth Circuit also found that Brown's claim that a violation of 15:609 was a violation of due process rights was frivolous, because a mere violation of state law does not state a constitutional claim under § 1983. Id. (citing Giovanni v. Lynn, 48 F.3d 908, 912-13 (5th Cir. 1995). The result is the same for Robinson. Even if Defendants violated a Louisiana statute, Robinson cannot state a constitutional claim against Defendants.

Additionally, the Court notes that verbal threats do not amount to a constitutional violation. Id. (citing Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)).

E.     Robinson is not entitled to damages regarding the parole hearing.

Robinson claims he was wrongfully denied parole because Warden Slay lied to the parole board, submitted false disciplinary offenses, and behaved unprofessionally at Robinson's parole hearing. A plaintiff may not challenge the specific outcome of any particular parole board application in a § 1983 action. See Jeffery v. Owens, 216 F. App'x 396 (5th Cir. 2006) (holding that a prisoner may not use a § 1983 action to challenge a specific error in the denial of his parole application; rather, he may use such an action only to make a general challenge to parole procedures). Moreover, it is well-settled that Louisiana law does not create a liberty interest in parole that is

protected by the Due Process Clause, and in the absence of such a liberty interest, a due process challenge to Parole Board procedures must fail. See Stevenson v. Louisiana Board of Parole, 265 F.3d 1060 (5th Cir. 2001) (holding that where a state does not create a protected liberty interest in parole, inmates "are not entitled to challenge the procedures employed during their parole hearing under Due Process Clause").

Finally, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Kyles v. Garrett, 353 F. App'x (5th Cir. 2009) (quoting Wilkinson v. Dotson, 544 U.S. 72, 82 (2005). To the extent an award of damages would imply the invalidity of Robinson's current incarceration, his claim is barred.

### F. Robinson is not entitled to injunctive relief.

For a preliminary injunction to be issued, a Petitioner must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. See Planned Parenthood of Houston & Southeast Texas v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005). Because dismissal of Robinson's complaint is

recommended, Robinson cannot meet the first requirement for a preliminary injunction.

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the § 1983 complaint and motion for injunctive relief (Doc. 1) be DENIED and DISMISSED with prejudice under §§ 1915(e)(2)(b) and 1915A.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have 14 calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within 14 days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within 14 days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 5th day of October, 2018.

                                                  Joseph H.L. Perez-Montes
                                                  United States Magistrate Judge